IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEMARCO NICHOLS | ) | |
| | ) | |
| Plaintiff, | ) | No. 16 C 11285 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION AND ORDER**

DeMarco Nichols sued his former employer, Ford Motor Company. Nichols worked on an assembly line at Ford and when he lost his wife he was diagnosed with depression and sought medical leave. After his medical leave expired, Nichols did not returnwork and Ford fired him. His complaint alleges that Ford discriminated against him and failed to accommodate his disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* Ford moves for summary judgment. For the following reasons, the Court grants Ford's Motion for Summary Judgment.

**I.  NICHOLS'S RESPONSE TO FORD'S RULE 56.1 STATEMENT**

The Court must begin by addressing Nichols's response to Ford's Local Rule ("LR") 56.1 statement of facts. Ford contends that *every* fact in its LR 56.1 statement should be deemed admitted because each of Nichols's responses either admits Ford's facts (or admits them in part and fails to address the remainder), presents non-responsive information that does not controvert Ford's facts, fails to cite to the record, contradicts Nichols's own prior statements, constitutes conclusions without supporting facts, or relies on inadmissible evidence (or suffers from some combination of those deficiencies). *See* Dkt. 62 at 2-5 & n.5-10. Though the Court will not deem every single fact in Ford's LR 56.1 statement to be admitted, the vast majority of Nichols's

1

responses are deficient in some way. As explained further below, the Court has reviewed Ford's challenges carefully and the facts that the Court has found take those challenges into account.

      **a.**      **Denials Without Record Support**

Facts that are denied without evidentiary support are undisputed for purposes of summary judgment. *See* L.R. 56.1(a), (b)(3)(B); *see also Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817 ("[W]here a non-moving party denies a factual allegation by the [moving party], that denial must include a specific reference to the affidavit or other part of the record that supports such a denial"). In several instances, Nichols denies Ford's allegations but the record citations he includes do not controvert Ford's allegations or otherwise support his denials. In other instances, he denies Ford's allegations but does not include any record citations at all. In both cases, those facts have been deemed admitted. Nichols denies other allegations based on his lack of knowledge. Personal knowledge is not required to controvert a fact, and Nichols is obligated to present evidence to contest Ford's facts. Those facts have been deemed admitted as well.

      **b.**      **Denials With Additional Facts**

Local Rule 56.1 requires a party seeking summary judgment to include a statement of material facts with its motion. L.R. 56.1(a)(3). The party opposing summary judgment must then respond to the movant's proposed statement of facts. The opposing party's response must include both "a response to each numbered paragraph in the moving party's statement" with specific citations to the record, *see* L.R. 56.1(b)(3)(B), and "a statement . . . of any additional facts that require the denial of summary judgment," *see* L.R. 56.1(b)(3)(C); *see also Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643-44 (7th Cir. 2008). In many instances, Nichols's responses to Ford's allegations do not simply negate Ford's statements—they include new facts as well. If Nichols wishes to introduce new facts, he must include them in his LR 56.1(b)(3)(C) statement of

additional facts with proper citations to the record. The Court disregards a denial that does more than negate its opponent's factual statements. *See Ciomber*, 527 F.3d at 643.

## II.  STATEMENT OF FACTS

The following facts are supported by the record and, except where otherwise noted, are undisputed.

Ford hired Nichols in March 2012 as an entry-level employee at Ford's Chicago Stamping Plant ("CSP") in Chicago Heights, Illinois. (Dkt. 51 ¶¶ 1, 3.) In May 2013, Nichols requested and was granted time off under the Family Medical Leave Act ("FMLA") to care for his wife, who was in hospice. (*Id.* ¶ 6.) Nichols's wife died on May 13, 2013 and Ford granted him bereavement leave. (*Id.* ¶¶ 7-8.)

Nichols was diagnosed with depression "sometime after his wife passed away." (*Id.* ¶ 38.) On June 13, 2013, Nichols's physician submitted paperwork to the CSP Medical Department indicating that Nichols was incapacitated and unable to work, pending evaluation by a psychiatrist, due to his wife's death. (*Id.* ¶ 9.) Nichols opened a medical leave of absence from work beginning June 13, 2013. (*Id.* ¶ 10.) A Ford employee can open a medical leave of absence by contacting Ford's third-party benefits administrator, Unicare, which also provides short-term benefits to employees on leave. (*Id.* ¶ 11.) Unicare updates Ford regarding extensions to employee medical leave through its leave-tracking system. (*Id.*) Nichols's family physician initially certified his medical leave through July 31, 2013. (*Id.* ¶ 12.) The family physician then referred Nichols to a psychiatrist, who certified to Unicare that Nichols would need his medical leave extended to September 16, 2013. (*Id.*) During this time, Nichols received short-term disability benefits through Unicare. (*Id.* ¶ 13.)

Nichols knew that in order to continue receiving disability benefits, and to justify his continued absence from work, he needed to remain under the care of a medical professional. (*Id.* ¶

14.) Nichols saw a psychiatrist, Dr. Jain, twice—once in July 2013 and once in September 2013. (*Id.* ¶ 15.) During the September 2013 visit, Dr. Jain "mentioned something" to Nichols about hospital treatment. (*Id.* ¶ 16.) Nichols did not understand and "didn't *want to* understand what [Dr. Jain] meant when he mentioned" hospital treatment. (*Id.* ¶ 18.) (emphasis added). Nichols was not willing to undergo "hospital treatment" and did not speak to Dr. Jain any further about treatment. (*Id.* ¶ 19.) Around the time Dr. Jain raised the possibility of hospital treatment for Nichols's depression, Nichols made an appointment with a different psychiatrist, Dr. Chappel, to seek a second opinion. (Dkt. 58 ¶¶ 17, 19.) He also made an appointment with a therapist. (*Id.* ¶ 22.)

On September 23, 2013, Dr. Jain informed Unicare that he was closing Nichols's case "due to non-compliance with appointments and treatment recommendations." (Dkt. 51 ¶ 23.) Unicare "closed [Nichols's] medical leave as of September 23, 2013." (*Id.* ¶ 28.) The next day, Unicare notified Nichols that his case was closed and that "if he did not provide satisfactory medical information to verify his continued absence, his disability claim would be denied and his medical leave of absence from work would not be approved." (*Id.* ¶ 25; Dkt. 58 ¶ 25.) Two weeks later, on October 10, Ford sent Nichols a letter (known as a "five-day quit notice") notifying him that his medical leave of absence had expired and that if he did not either report to work or advise Ford of the "status of [his] illness" within "[five] working days," he would be terminated. (Dkt. 51 ¶ 29.) Nichols did not receive the letter until October 17. (*Id.* ¶ 32.) On October 30, 2013, Ford terminated Nichols. (*Id.* ¶ 36.)

Nichols was unable to work from the time his medical leave began, on June 13, 2013, through his termination on October 30, 2013. (*Id.* ¶¶ 40-41.) In fact, Nichols was not able to work

until he applied for a job with the United States Postal Service beginning in August 2015. (*Id.* ¶ 42.)

The parties dispute exactly what steps Nichols took to seek additional medical treatment following Dr. Jain's mention of hospital treatment. Yet, any factual dispute regarding Nichols's further medical treatment is not material. Nichols argues that Ford failed to reasonably accommodate him when it refused to extend his medical leave so he could seek additional treatment and provide Ford with documentation. But the record establishes that Nichols is not a "qualified person" under the ADA because an extended medical leave is not a reasonable accommodation, and so any disputes regarding precisely what steps he took to seek additional treatment are immaterial.

The parties also dispute whether Nichols complied with the five-day quit notice. For the same reasons, any such dispute is also immaterial. Nichols argues that because he complied with the notice, Ford should have extended his medical leave instead of firing him. But Nichols's compliance with the five-day quit notice has no impact on whether he is a "qualified person" under the ADA. The record establishes that he is not, which is fatal to his claim.

### III. LEGAL STANDARD

Summary judgment is appropriate only if "the admissible evidence shows that there is no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law." *Monroe v. Ind. Dep't of Transp.*, 871 F.3d 495, 503 (7th Cir. 2017) (citing *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 488 (7th Cir. 2014)). "A material fact is one that affects the outcome of the suit." *Id.* While the Court must construe all the facts and reasonable inferences in the light most favorable to the nonmoving party, "our favor toward the nonmoving party does not extend to drawing inferences that are supported only by speculation or conjecture." *Id.* The Court "limits its analysis of the facts on summary judgment to evidence that

is properly identified and supported in the parties' statements." *See Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000).

## IV. DISCUSSION

Nichols claims Ford discriminated against him because of his disability and failed to provide a reasonable accommodation.[1] To establish discrimination under the ADA, Nichols must show that "(1) he is disabled; (2) he is otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) the adverse job action was caused by his disability." *Monroe*, 871 F.3d at 503.

Similarly, a claim for failure to accommodate under the ADA requires Nichols to show that (1) he was a qualified individual with a disability; (2) Ford was aware of his disability; and (3) Ford failed to accommodate his disability reasonably. *Taylor-Novotny v. Health All. Med. Plans, Inc.*, 772 F.3d 478, 493 (7th Cir. 2014).

Ford does not contest that Nichols's depression was a disability. Ford argues, however, that Nichols failed to make his *prima facie* case because he did not show that he was qualified to perform the essential functions of his job with or without a reasonable accommodation. (Dkt. 50 at 3-4.) Even if he had made such a showing, Ford contends that it had a legitimate, non-discriminatory reason to fire him. (*Id.* at 5-6.) Ford further argues that the accommodation Nichols sought, to the extent it can be identified, was not reasonable. (*Id.* at 6-8.)

---

[1] As Ford points out, Nichols's precise claims under the ADA are difficult to pin down. In his opposition brief, Nichols explicitly notes that it is important for an ADA plaintiff to be clear about whether they making "a discrimination claim or a failure to accommodate claim," *citing Weigel v. Target Stores*, 122 F.3d 461, 464 (7th Cir. 1997) (noting the different analytical frameworks for each claim), and then confusingly states that he "was subjected to disability discrimination when [Ford] failed to provide him with the reasonable accommodation of extending his medical leave." Dkt. 57 at 4. Nichols proceeds to argue both that Ford discriminated against him on the basis of his disability (*see id.* at § III(A)) and that Ford denied him a reasonable accommodation (*see id.* at III(B)). Despite this, Ford argues that Nichols "unequivocally" stated that he is bringing *only* a failure to accommodate claim, and that the Court should disregard his discrimination arguments. Dkt. 62 at 7-8. Nichols's statement about his own claims is puzzling, but it is far from unequivocal. Nichols argues both claims and the Court will address both.

6

### a. Qualified Individual

The ADA defines a "qualified individual" as one "who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Majors v. Gen. Elec. Co.*, 714 F.3d 257, 533 (7th Cir. 2013). The determination should be based on an individual's capabilities at the time of the employment decision. *Bay v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000). Attendance is an essential function for "factory positions . . . where the work must be done on the employer's premises; maintenance and production functions cannot be performed if the employee is not at work." *Amadio v. Ford Motor Co.*, 238 F.3d 919, 927 (7th Cir. 2001) (*quoting Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 900 (7th Cir. 2000)).

Nichols admits that he could not work between June and October 2013. (Dkt. 58 ¶¶ 40-41.) He also admits that he was only able to return to work when he was hired by the United States Postal Service nearly two years later, in August 2015. (*Id.* ¶ 42.) Because attendance is an essential function of jobs like Nichols's, by admitting that he could not go to work, Nichols admits that he could not perform the essential functions of his job. Despite these admissions, Nichols argues that "he was able to do his job as a laborer," but "sought time off to deal with his disability" and "get it under control" with medical treatment. (Dkt. 57 at 5-6.) But Nichols must support this argument with facts. He does not. Instead, he argues that he is a qualified individual because he followed Ford's medical leave procedures. *Id.* That is not relevant to whether or not he could perform the essential functions of his job—in this case, to go to work at all. Even if he did follow Ford's medical leave procedures, a "medical leave spanning multiple months does not permit the employee to perform the essential functions of his job. To the contrary, the '[i]nability to work for a multi-month period removes a person from the class protected by the ADA.'" *Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 481 (7th Cir. 2017). Because Nichols did not—and, as

he admitted, could not—attend work from June 13, 2013 through his termination on October 30, 2013, he was not qualified to perform the essential functions of his job. This is fatal to both his discrimination and failure to accommodate claims. *See, e.g., Basith v. Cook Co.*, 241 F.3d 919, 932 (7th Cir. 2001) ("[w]e need not decide whether [plaintiff] was denied reasonable accommodation in light of his failure to show a question of fact existed as to whether he was a qualified individual with a disability"). Because his *prima facie* case fails, he cannot avoid summary judgment.

    b.    **Reasonable Accommodations**

Even if Nichols was qualified to perform the essential tasks of his job, his claims still fail as a matter of law because the accommodation he requested, to the extent it can be identified, was not reasonable. The Court cannot say exactly what accommodation Nichols sought from Ford. It seems that Nichols does not know himself. For instance, Nichols's complaint alleges that Ford was aware of his disability and fired him "rather than provide accommodations for the time needed to obtain the necessary medical treatment." (Dkt. 23 ¶ 13.) In response to Ford's interrogatories, however, Nichols stated that the accommodation he sought was "to take FMLA" and that his request to take FMLA was denied. (Dkt. 51 ¶ 43; Dkt. 51-14 ¶ 16.) Importantly, Nichols never filed an FMLA claim in this case. In his deposition, Nichols testified that he never requested an accommodation from Ford, but that the accommodation he expected was additional time to seek a second opinion and give Ford written documentation of his medical status. (Dkt. 51 ¶ 46; Dkt. 51-2 at 150:18 – 151:3.)[2] In his response to Ford's LR 56.1 statement, Nichols states, without citation, that his requested accommodation was "the allowance to attend the second opinion appointment

---

[2] "Q: Do you contend that Ford failed to accommodate [your] disability? A: . . . [I]n my opinion, they did. Q: And what was the accommodation that you requested? A: Actually, there was no request. The accommodation, in my opinion, was to allow me to go to my second opinion and then furnish . . . written documentation [ ]." Dkt. 51-2 at 150:18-151:3.

8

with Dr. Chappell which had been confirmed." (Dkt. 58 ¶ 43.) His brief opposing summary judgment offers yet another formulation. Nichols argues, again without citation, that "the reasonable accommodation requested is that Ford honor its own procedures when an employee follows said procedures." (Dkt. 57 at 9). Three pages earlier, he asserts that "a reasonable accommodation would have been to allow [him] to continue his medical leave." *Id.* at 6.

Regardless of the details of the requested accommodation—whether it be under the guise of FMLA leave,[3] extended medical leave, or additional time to acquire documentation to comply with Ford's medical leave procedures—Nichols's request boils down to additional time off of work, which is not a reasonable accommodation under the ADA. "The sort of accommodation contemplated by the [ADA] is one that will allow the person to 'perform the essential functions of the employment position.' Not working is not a means to perform the job's essential functions." *Byrne v. Avon Products, Inc.*, 328 F.3d 379, 381 (7th Cir. 2003) (holding that the request to "not work[] for an extended time" is not a reasonable accommodation for severe depression); *see also Severson*, 872 F.3d at 481 ("a long-term leave of absence cannot be a reasonable accommodation"). Exactly how much time Nichols sought is unclear. He argues that he was not seeking an indefinite or extended leave—just one that would allow him enough time to provide Ford with documentation that he remained under a physician's care, as Ford's medical-leave policy required him to do. But the length of the requested leave is not relevant here, because additional time off of work would not have allowed him to perform the essential functions of his job. It simply would

---

[3] Though he mentions FMLA leave as a possible accommodation for his disability, Nichols affirmatively states that he is not bringing a claim under the FMLA. Dkt. 57 at 9. Ford points out that he could not, for three reasons: (1) any FMLA claim would be time-barred; (2) had he been granted FMLA leave from the time he first went on medical leave, it would have been exhausted prior to his termination; and (3) he was not eligible for FMLA leave at the time his medical leave ended, because he had not worked 1,250 hours in the preceding 12 months. Dkt. 50 at 8. Nichols concedes that he is not bringing an FMLA claim and does not respond to Ford's arguments, and so the Court need not address his relief under FMLA further.

9

have allowed him to continue not working. That is not the sort of "reasonable accommodation" the ADA requires employers to provide. *See Severson*, 872 F.3d at 481-82.

Again, Nichols tries to combat Ford's arguments by leaning on his attempts to comply with Ford's medical leave procedures. But that has no bearing on whether the accommodation he sought was reasonable. Nichols has not shown that it was, so his claim cannot withstand summary judgment.

## CONCLUSION

Because the evidence, viewed in the light most favorable to Nichols, does not create a reasonable inference that Ford discriminated against him or failed to accommodate his disability, Ford is entitled to summary judgment as a matter of law. Ford's motion for summary judgment (Dkt. 49) is granted.

_____
Virginia M. Kendall
United States District Judge

Date: March 27, 2019